CHESSHIR v. COPELAND.

Opinion delivered October 20, 1930.

*McConnell & Jackson,* for appellant.
*Feazel & Steel,* for appellee.

HART, C. J. This appeal is prosecuted to reverse a decree restraining appellants from carrying into effect an order of the county court of Howard County, made on the 13th day of September, 1930, authorizing the county court to borrow $100,000 for the purpose of improving the roads and bridges in Howard County and to issue bonds therefor. The order further recited that at the general election to be held on the 4th day of November, 1930, the proposition should be submitted to the voters of Howard County to vote a three-mill tax for the purpose of paying the bonds and interest for a period of thirty years.

The county court claimed the right to act under an amendment to the Constitution proposed by the Legislature of 1915 and adopted at the general election held in 1916. The amendment reads as follows:

"The county courts in their respective counties, in addition to the county tax now allowed to be levied, shall have power when authorized, as hereinafter provided, to levy an annual tax not exceeding three mills on the dollar on all taxable property, which shall be collected and expended in making and repairing public roads and bridges in their respective counties; and said court shall have power, after authority given as hereinafter provided, to levy a tax not exceeding three mills on the dollar on all taxable property for a period of time not to exceed thirty years, to borrow money, issue bonds and pledge the revenues arising from the tax levied for a period of time, to pay the interest and principal of any sum or sums so borrowed. All bonds issued by authority herein given shall bear a rate of interest not to exceed six per cent. per annum. All sums so borrowed shall be used exclusively in making and repairing the public roads and bridges in the county. The annual tax and the tax for a period of years shall not both be levied and be in force at the same time in any county—the levy of one shall exclude the levy of the other.

"Before any levy of taxes herein authorized shall be made, the question of levying such tax shall be submitted to the qualified electors of the county at a general or special election called for that purpose, at which a majority of the qualified electors voting at such an election shall have voted in favor of such levy of taxes." Acts of 1915, pp. 1491, 1492; Constitution of Arkansas, Applegate, p. 200.

It will be noted that the amendment in effect provides for the county court to levy a tax not exceeding three mills on the dollar on all taxable property for a period of time not to exceed thirty years, to borrow money, issue bonds, and pledge the revenues from the tax levied to the payment of the principal and interest thereof. The amendment further provides that, before the tax shall be levied, the question of levying the tax shall be submitted to the qualified electors of the county at a general election or at a special election called for that purpose.

The decree of the chancery court restraining the county judge and the county election commissioners from proceeding further in the matter was based upon the holding that the amendment copied and referred to above has been impliedly repealed by the passage of an amendment proposed by the Legislature of 1923 and adopted at the general election 1924. Acts of 1923, 797; Acts of 1925, p. 1087; Constitution of Arkansas, Applegate, p. 219. The first section of this amendment amends section 4 of article 12 of the Constitution by adding thereto that the fiscal affairs of counties, cities, and incorporated towns shall be conducted upon a sound financial basis and prohibited the making of a contract or allowance for any purpose whatever in excess of the revenue from all sources for the fiscal year in which the contract or allowance is made. The section contains a proviso, which reads as follows:

"Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this

amendment, counties, cities and incorporated towns may issue interest bearing certificates of indebtedness or bond with interest coupons for the payment of which a county or city tax, in addition to that now authorized, not exceeding three mills may be levied for the time as provided by law until such indebtedness is paid.''

We think that the chancery court correctly held that the amendment under which the county judge and election commissioners proceeded to act was impliedly repealed by the later amendment adopted at the general election in 1924 and referred to above. It is a rule of universal application that the Constitution must be considered as a whole, and that, to get at the meaning of any part of it, we must read it in the light of other provisions relating to the same subject. The general rule is that constitutional provisions and amendments thereto must be harmonized where practical. If there is to some extent an inconsistency or repugnancy between a provision of the Constitution and an amendment thereto, so that one or the other must yield, the amendment being the last expression of the sovereign will of the people will prevail as an implied repeal to the extent of the conflict. The same rule of construction would apply in the construction of amendments. The later amendment would govern to the extent that it was repugnant to or in conflict with the provisions of the former one. *Little Rock* v. *North Little Rock,* 72 Ark. 195, 79 S. W. 785; *Ferrell* v. *Keel,* 105 Ark. 380, 151 S. W. 269; *State ex rel.* v. *Donaghey,* 106 Ark. 56, 152 S. W. 746; *Grant* v. *Hardage,* 106 Ark. 506, 153 S. W. 269; *Babb* v. *El Dorado,* 170 Ark. 10, 278 S. W. 649; *Lybrand* v. *Wafford,* 174 Ark. 298, 296 S. W. 729; *Polk County* v. *Mena Star Company,* 175 Ark. 76, 298 S. W. 1002; and *Lake* v. *Tatum,* 175 Ark. 90, 1 S. W. (2d) 554. The principle of constitutional construction above laid down has been uniformly adhered to and applied according to the varying facts of the different cases.

In the case of *Babb* v. *El Dorado,* 170 Ark. 10, 278 S. W. 649, the court held that the amendment adopted in 1918 purporting to be an amendment of § 1 of article 16 of the Constitution, which authorized counties, cities and towns of 1,000 inhabitants to issue bonds, to raise funds to construct certain public improvements was impliedly repealed by what was called amendment No. 11 adopted in 1924, purporting to amend § 4 of article 12 of the Constitution which limited the purposes for which bonds might be issued by counties, cities and towns to the payment of existing indebtedness, both because there was an irreconcilable conflict between the two amendments, and because the later amendment covers the subject-matter of the former amendment. The court expressly stated that the later amendment was a complete substitution for the provision in the former amendment with reference to the issuance of bonds, and leaves nothing of that amendment except the restatement of the original § 1 of article 16 of the Constitution.

The amendment adopted in 1918 readopts in full § 1 of article 16 of the Constitution, and then adds to it a provision authorizing incorporated towns of 1,000 or more in population and cities of the first and second class to issue interest-bearing bonds for the purpose of funding or refunding existing indebtedness incurred prior to the adoption of the amendment, and also for the purpose of using the funds to construct any of the public improvements enumerated in the amendment. The later amendment makes an addition to § 4 of article 12 of the Constitution by a provision authorizing counties, cities and incorporated towns to issue bonds to pay indebtedness existing at the time of the adoption of the amendment, and to levy a tax not exceeding three mills on the dollar to raise funds to pay the bonds as they mature. The amendment further provides that the fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and that no county court shall make any contract or allowance for

any purpose whatever in excess of the revenue from all sources for the fiscal year in which the said contract or allowance is made. The language just referred to was declared by the court to be too clear to admit of any construction that would harmonize it with the authority given under the amendment of 1918 to issue bonds.

The court further stated in *Kirk* v. *High,* 169 Ark. 152, 273 S. W. 389, 41 A. L. R. 782, that amendment No. 11, adopted in 1924, prohibited the issuance of warrants or other evidences of indebtedness in excess of the revenue of the current year, and this without any exception whatever. The court further said that amendment No. 11 contains the distinct provisions which are applicable, regardless of the particular place in which it is inserted in the Constitution, and the fact that it is annexed to § 4 of article 12 does not limit its effect in repealing the conflicting provisions of the amendment adopted in 1918 to issue bonds in certain instances.

In all subsequent cases which have come before this court in the construction of what is generally called amendment No. 11, being the amendment adopted at the general election in 1924, it has been held that contracts made or warrants issued by a county in any year in excess of the revenue for that year are void. The court has said that the amendment deals with the rights and powers of counties with respect to their fiscal affairs. The amendment forces counties to live within their annual income derived from a maximum constitutional tax levy, and by it the people intended to put the counties of the State, in so far as the future is concerned, upon a cash basis. *Ivy* v. *Edwards,* 174 Ark. 1167, 298 S. W. 1006; *Polk County* v. *Mena Star Co.,* 175 Ark. 76, 298 S. W. 1002; *Lake* v. *Tatum,* 175 Ark. 90, 1 S. W. (2d) 554.

We are of the opinion that by the adoption of the amendment at the general election in 1924, commonly called amendment No. 11, the people intended to place the fiscal affairs of counties, cities, and towns upon a cash basis, and to prevent the issuance of further bonds by

them except for the payment of indebtedness existing at the time of the adoption of the amendment. As we have already seen, the court has expressly declared this to be the purpose and effect of the amendment, and said that it impliedly repealed the provisions of the amendment adopted in 1918 with reference to the issuance of bonds. It would be repugnant to and in conflict with the provisions of the amendment adopted at the general election in 1924, commonly called amendment No. 11, which intended to prohibit the issuance of bonds except for indebtedness existing at the time of its adoption, to say that the provisions of an earlier amendment looking to the issuance of bonds for constructing roads, adopted in 1910, should also continue in force.

This view is strengthened when we consider that the power to issue bonds in amendment No. 11 is given by the proviso. This calls for an application of the maxim, *"Expressio unius est exclusio alterius."* The fact that the framers of the amendment to the Constitution by the proviso authorized the issuance of bonds to pay existing indebtedness and the levying of taxes in the future to pay the principal and interest of the bonds, negatives the idea that counties, cities, or towns should have the power to issue bonds for any other purpose than that expressly granted in the proviso. *Stanley* v. *Gates,* 179 Ark. 886, 19 S. W. (2d) 1000.

We do not think that the decision in *Lybrand* v. *Wafford,* 174 Ark. 298, 296 S. W. 729, is in conflict with the views herein expressed, but we are of the opinion that the holding in the present case follows from the principles of law therein announced and applied to the facts of that case. There the court had under consideration the question of whether an amendment adopted at the general election in 1926 repealed the bond-issuing clause of the amendment adopted in 1924, commonly known as amendment No. 11. The amendment adopted in 1926 contains a clause that no county, city, town or municipality shall ever issue any interest-bearing evi-

dences of indebtedness except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874. It was there claimed that the provision just referred to by necessary implication repealed the proviso of amendment No. 11, authorizing the issuance of bonds to pay indebtedness outstanding at the time of the adoption of the amendment in October, 1924. The court said that to hold that the provisions of the later amendment referred to the indebtedness existing at the time of the adoption of the Constitution of 1874 would lead to absurdity and a contradiction between different parts of the amendment because later on in the same section a proviso is inserted allowing cities of the first and second class to issue bonds for the payment of any indebtedness existing at the time of the adoption of the amendment, and for other purposes enumerated therein. The court expressly stated that the expression, "present existing indebtedness," and the expression, "indebtedness existing at the time of the adoption of the Constitution of 1874," mean precisely the same thing. After a comprehensive and exhaustive discussion of the question, the court concluded by holding that the later amendment called No. 15 did not repeal the earlier amendment called No. 11 and that both must be retained as a part of the organic law of the State. Having reached the conclusion that the expression, "indebtedness existing at the time of the adoption of the Constitution of 1874," meant the same as the phrase, "present existing indebtedness," the court held that there was no implied repeal of the bond-issuing clause in the amendment adopted at the general election held in 1924 by the amendment adopted at the general election in 1926 for the reason that, as construed by the court, there was no conflict in the two clauses of the amendments with regard to the issuance of bonds, and it necessarily followed that the later amendment gave cities of the first and second class power to issue bonds for the improvements enumerated

therein in addition to the power conferred by the earlier amendment to issue bonds to pay debts outstanding at the time of the adoption of the amendment.

Consequently, we are of the opinion that the people by the adoption of amendment No. 11 at the general election in 1924 intended to prevent the further issuance of bonds by counties, cities, and towns except for the payment of indebtedness existing at the time of the adoption of the amendment; and this, by necessary implication, repealed all former amendments looking to the issuance of bonds by counties, cities or towns. Under the views we have expressed, the amendment under consideration in this case and under which the county court was acting has been repealed by implication by the later amendment as pointed out above, and we may add that this leaves amendment No. 3 relating to the annual road tax of three mills in full force and effect.

It follows that the decree of the chancery court was correct, and must be affirmed.