312 So.2d 422 (1975)
Delin Ray RUSSELL
v.
STATE of Mississippi.
No. 48198.
Supreme Court of Mississippi.
March 31, 1975.
Mitchell, Rogers & Eskridge, Tupelo, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Sp. Asst. Atty. Gen., Jackson, for appellee.
GILLESPIE, Chief Justice:

ON MOTION
Defendant's motion requests submission of his case to a quorum of the full Court or to the whole Court sitting en banc. He challenges the validity of the order of this Court entered on July 25, 1974, authorizing the Court to sit in three divisions of three judges each, with each division having full power to hear and adjudge all cases assigned to it.[1] The motion raises the question whether three-judge divisions are authorized by the Mississippi Constitution.
Prior to 1916 the Court consisted of three judges, any two of whom constituted a quorum. Miss.Const. § 145.
In 1916 a constitutional amendment was adopted as section 145A as follows:
The Supreme Court shall consist of six judges, that is to say, of three judges in addition to the three provided for by section 145 of this Constitution, any four of whom when conveyed shall form a quorum. The additional judges herein provided for shall be selected one for and from each of the Supreme Court districts in the manner provided by section 145 of this Constitution, or any amendments thereto. Their terms of office shall be as provided by section 149 of this Constitution, or any amendments thereto.
Also in 1916, by constitutional amendment, section 149A was adopted, as follows:
The Supreme Court shall have power, under such rules and regulations as it may adopt, to sit in two divisions of three judges each, any two of whom when convened shall form a quorum; each division shall have full power to *423 hear and adjudge all cases that may be assigned to it by the court. In event the judges composing any division shall differ as to the judgment to be rendered in any cause, or in event any judge of either division, within a time and in a manner to be fixed by the rules to be adopted by the court, shall certify that in his opinion any decision of any division of the court is in conflict with any prior decision of the court or of any division thereof, the cause shall then be considered and adjudged by the full court or a quorum thereof.
Pursuant to the last mentioned amendments the Court sat in two divisions of three judges each. It is significant that under section 145A a quorum of the six-judge Court was four, and under section 149A a quorum of a three-judge division was two. Thus, there were constitutional provisions for a quorum of the full court and a quorum of a three-judge division. Section 145A, in the first sentence, expressly stated that a quorum of the full Court was four.
In Slush v. Patterson, 201 Miss. 113, 29 So.2d 311 (1947), three of the five judges sitting reversed the case, with two judges dissenting. The case is authority for the proposition that a majority of a four-judge quorum could reverse a case, a majority of the full Court not being required. In Jefferson Standard Life Insurance Co. v. Ham, 178 Miss. 838, 173 So. 672 (1937), the Court answered a challenge to the validity of a three-judge division by holding that a three-judge division had full power to hear and determine cases brought before it. The adoption of section 149A left it to the Court to decide whether it would sit en banc or in divisions of three. Hudson v. Gulf Refining Co., 202 Miss. 331, 30 So.2d 421, cert. denied, 332 U.S. 775, 68 S.Ct. 84, 92 L.Ed. 359 (1947).
In 1950 section 145B was adopted as a part of the Constitution, as follows:
The Supreme Court shall consist of nine judges, that is to say, of three judges in addition to the six provided for by section 145A of this Constitution, any five of whom when convened shall constitute a quorum. The additional judges herein provided for shall be selected one for and from each of the supreme court districts in the manner provided by section 145A of this Constitution or any amendment thereto. Their terms of office shall be as provided by section 149 of this Constitution or any amendment thereto.
There has been no amendment to section 149A, which has remained unchanged since 1916, and the provision for a three-judge division remains in effect. The only change wrought by section 145B was to increase the number of judges to nine and raise the number of judges constituting a quorum of the full Court from four to five.
After adoption of section 145B, a motion was filed to remand to the docket for a hearing by the full Court a case which had been decided by a three-judge division before adoption of section 145B, on the ground that the judgment of the three-judge division was not a final judgment by the highest court of the state in which a decision could be had, citing 28 U.S.C.A. section 1257, and Gorman v. Washington University, 316 U.S. 98, 62 S.Ct. 962, 86 L.Ed. 1300 (1942). The Court overruled the motion and held that the judgment of the three-judge division was a final judgment rendered by the highest court of the state. Hays Finance Co. v. Bailey, Miss., 56 So.2d 806, appeal dismissed, 343 U.S. 959, 72 S.Ct. 1057, 96 L.Ed. 1358 (1952).
After adoption of section 145B, the Court adopted "for the convenient dispatch of business" the procedure of sitting in divisions of five judges and provided that,
[I]n the event any Judge of the Court within fifteen (15) days after a judgment has been rendered, or an order entered by any group, or while a petition for rehearing therein is pending, shall *424 certify in writing filed with the Clerk that in his opinion such order or judgment is in conflict with a prior decision of the Court, or of any group thereof, the order or judgment shall be set aside by order entered on the minutes of the first session of either group thereafter; and the Chief Justice shall cause the full Court, or a quorum thereof, to assemble in a conference at a convenient time for the decision of the case, and the judgment agreed on shall be entered at any sitting of any group of the Court. Rule 35, Rules of the Supreme Court (before amendment).
In Ryan Supply Company v. Brett, 222 Miss. 30, 75 So.2d 721 (1954), an attack was made on the validity of the five-judge divisions. In upholding the validity of that procedure the Court noted that a case could not be decided except by the unanimous vote of the five judges in the division. The decision was based upon rules of the Court and was not an adjudication that the Court could not sit in divisions of three judges under the provisions of 149A, since that question was not before the Court.
The validity of the three-judge division depends upon the interpretation of the word "quorum" as used in sections 145B and 149A of the Constitution. Reading these two sections together reveals that a quorum of the full Court is five and a quorum of a three-judge division is two. If only five judges are present when Court convenes as a full Court, it can proceed to transact business and decide cases, as provided in section 145B. But only two judges of a three-judge division constitute a quorum with power to adjudge cases subject to the exceptions enumerated in section 149A. (However, under the order of July 25, 1974, and under Rule 35, the Court sits in divisions only when three judges are present.)
The last sentence of section 149A provides that "In event the judges composing any division shall differ as to the judgment ... the cause shall then be considered and adjudged by the full court or a quorum thereof." Section 149A recognizes a quorum of the full Court (five) and also provides that a quorum of a division of three judges shall be two. Not only is there harmony between sections 145B and 149A, but there is also harmony between the provisions in section 149A providing for a quorum of a division and a quorum of the full Court.
There is no significance, as far as the question of the validity of three-judge divisions is concerned, that section 149A provides for "two" divisions of three judges each. At the time of the adoption of section 149A the Court was increased to six judges. If the word "two" had been omitted there would have been no change in the meaning. The number of judges comprising a division was important; there could only be two divisions so the word "two" was surplusage. Of course, the Court, by administratively rotating the judges, could now sit in two divisions of three judges each, and thus follow the letter of section 149A. This would merely exalt form over substance. It is administratively more efficient to have three divisions instead of two, and substantively there is no difference between having two divisions and having three.
The Court consisted of three judges until 1916. From 1916 to 1952 the Court consisted of six judges who sat in divisions of three. So it is that in all but twenty-two years of the state's history, all, or nearly all, decisions of the Supreme Court have been by three judges. Much of the volume of judicial decisions of both state and federal courts is accomplished in panels or divisions of three judges.
The Court decided to sit in three-judge divisions only after the most deliberate study and consideration of all aspects of the question. Rule 35, Rules of the Supreme Court as amended, goes much further than the Constitution requires in assuring that cases are brought before the full Court for en banc hearing whenever it appears appropriate. These provisions are *425 provided in Rule 35: (1) That the judges are rotated as often as administratively practical; (2) That cases are considered and adjudged by the full Court (a) whenever there is a difference between the judges of the division, (b) whenever any judge of any division, as late as fifteen days after judgment is entered, certifies (1) that in his opinion a decision is in conflict with any prior decision of the Court, or any division thereof, or (2) whenever the cause is of such importance that it should be considered and adjudged by the full Court.
Although not necessary to this decision, it is appropriate to state that all petitions for rehearing are adjudged by the full Court; also, no written opinion is handed down until each of the nine judges has read it and either concurred therein or noted his dissent.
Motion overruled.
All Justices concur, except RODGERS, P.J., who dissents.
RODGERS, Presiding Justice (dissenting):
I must respectfully disagree with my astute colleagues in their decision to deny petitioner's request to be heard in this Court before a quorum of five judges. I am convinced that a hearing before less than a quorum of five judges is a denial of due process of law. This Court, like all other departments of government in this state, is bound by the fundamental laws of the Constitution of Mississippi and the Constitution of the United States [Art. VI, Section 2], and no citizen can be deprived of life, liberty or property without due process of law. U.S.Const. amends. V, XIV; Miss. Const. § 14.

I.
Due process requires a hearing before a tribunal having jurisdiction of the case. The tribunal must be a legally constituted body for determining the rights of the parties. 16 Am.Jur.2d Constitutional Law §§ 580-81, at 985-88 (1964).
In the case of Charles v. City of Marion, 98 F. 166 (C.C.Ind. 1899), we are told that it is essential to due process of law that there shall not only be notice of a time and place for a hearing, but, what is more important, that there shall be a tribunal clothed with power by methods and rules prescribed by law to hear and determine the question involved.
I am convinced that the will of the people of this state is being thwarted by an effort of this Court to meet the obvious need of an intermediate appellate court to expedite and facilitate the progress of the growing caseload of appeals to this Court. We are in effect "watering down" the requirement of the Mississippi Constitution that five judges be convened to transact business by reducing the fundamental requirement so as to permit three judges to pass upon issues on appeal.
In H. Black, Handbook of American Constitutional Law § 234, at 616 (4th ed. 1927), we are told:
"Due process of law in judicial action implies a regular proceeding before a competent court, possessing jurisdiction, with an opportunity to the party to appear and be heard in his own defense or in rebuttal of the claim made against [him or] his property."
It is a rule of general acceptance that constitutional provisions are subject to the same rules of interpretation and construction that are applicable to other laws. 16 Am.Jur.2d Constitutional Law § 59, at 231 (1964).
It behooves us, therefore, to examine the words of the various applicable sections of the Constitution in the light of their general acceptance throughout the law spectrum.

*426 II.

THE MISSISSIPPI CONSTITUTION REQUIRES A QUORUM OF FIVE JUDGES.
Section 145B of the Mississippi Constitution 1890 is in the following language:
"The Supreme Court shall consist of nine judges, that is to say, of three judges in addition to the six provided for by section 145A of this Constitution, any five of whom when convened shall constitute a quorum. The additional judges herein provided for shall be selected one for and from each of the supreme court districts in the manner provided by section 145A of this Constitution or any amendment thereto. Their terms of office shall be as provided by section 149 of this Constitution or any amendment thereto."
What is a "Quorum" of Five Judges?
A "quorum" of course means a majority. 2 Bouvier's Law Dictionary 812 (7th ed. 1897), defines a "quorum" as follows:
"QUORUM. Used substantively, quorum signifies the number of persons belonging to a legislative assembly, a corporation, society, or other body, required to transact business. A quorum is such a number of the officers or members of any body as is competent by law or constitution to transact business. 18 Col. 18. There is a difference between an act done by a definite number of persons, and one performed by an indefinite number; in the first case a majority is required to constitute a quorum, unless the law expressly directs that another number may make one; in the latter case any number who may be present may act, the majority of those present having, as in other cases, the right to act; 7 Cow. 402; 9 B. & C. 856; 34 Vt. 316; Beach, Pub.Corp. 485; 27 Miss. 517."
We are also taught by many cases set out in 35A Words and Phrases, "Quorum" pp. 629-30, 633 (1963), that the word "quorum" means a majority:
"The word `quorum,' in a general sense, means a majority of the whole body. Berlin v. Nominations, 22 Pa. Co. Ct.R., 615, 616.
... State v. Trustees of Wilkesville Tp., 20 Ohio St. 288, 293.
... Morton v. Talmadge, 144 S.E. 111, 166 Ga. 620.
... Herring v. City of Mexia, Tex., 290 S.W. 792, 794.
... Gumaer v. Cripple Creek Tunnel, Transp. & Min. Co., 90 P. 81, 84, 85, 40 Colo. 1, 122 Am.St.Rep. 1024, 13 Ann.Cas. 781.
* * * * * *
Under Const. art. 6, §§ 5, 8, Rev.St. 1908, § 1412, a majority of the members of the Supreme Court constitute the court en banc, and a majority of the court as thus constituted may decide a case, three judges at least concurring; a `quorum,' as used in the statute, meaning a majority of the entire body. Mountain States Telephone & Telegraph Co. v. People, 190 P. 513, 517, 68 Colo. 487."
Our own Court has pointed out that a quorum meant a majority of the Court.
In the case of Carney v. Anderson, 214 Miss. 504, 59 So.2d 262 (1952), cert. denied, 344 U.S. 860, 73 S.Ct. 101, 97 L.Ed. 667 (1952), the appellant insisted upon being heard en banc. He cited a Missouri case as his authority. This Court pointed out, however, that the Missouri Constitution required that court to sit en banc to decide federal questions. It was then noted that our Constitution does not so provide. Our Court then went on to explain our procedure as follows:
"We have no such provision in the Constitution of this State nor do we have such a rule in this Court. Section 145A of our Constitution, as recently *427 amended, provides that any five of the nine members of the Court shall constitute a quorum. Since the adoption of that amendment we do not consider any cases in banc except in the event there is a disagreement among the five who originally heard the case and except in cases where a death sentence has been imposed and except in cases where we are confronted with overruling a prior decision and except in those cases which are considered by the panel of five judges to be of such importance that a consideration in banc is deemed advisable. Under our Constitution and rules the judgment heretofore entered is a final judgment. Hays Finance Co. v. Bailey, Miss., 56 So.2d 806." 214 Miss. at 518-19, 59 So.2d at 262.
As early as 1935, this Court had before it an issue as to whether a divided court could decide a case, and the Court pointed out:
"The words, `the cause shall then be considered and adjudged by the full court or a quorum thereof,' as used in the Constitution, [Section 149A] have no bearing on the procedure by which the court functions, except to permit the court to act when some of the judges are absent, provided a quorum (i.e., a majority) thereof are [sic] present." Dean v. State, 173 Miss. 254, 312, 162 So. 155, 158 (1935).
It was apparent to the Court at that time that a quorum meant a majority of the Court, and that a majority was necessary to transact business.
In Shedd v. State, 203 Miss. 544, 33 So.2d 816 (1948), this Court again pointed out that a vote of the majority of the members of the Court was required to decide an issue. We said:
"Three of us are of the opinion that the declaration was not admissible under the circumstances, while three of us agree that it was admissible, and its admission was not error. Since it takes four of the justices to sustain an assignment of error that will reverse the judgment of the trial court, this particular assignment of error is overruled." 203 Miss. at 551, 33 So.2d at 818.
Many years ago (1831) in the case of Arnett v. Bitsel, 1 Miss. (Walker) 496 (1831), where the law at that time required a habeas corpus suit to be heard by three associate justices of the county and only two were present, on appeal to this Court we held that all three judges were required. This was a trial court arrangement under the statute, but it seems to me that where the Constitution expressly states that five judges are required to act as a quorum, the absence of two judges violates the requirement of the Constitution equally, or more so, as would a statutory requirement.

III.

HOW TO INTERPRET CONFLICTING SECTIONS OF THE CONSTITUTION.
The recent order of this Court permitting the Court to sit in three divisions composed of three judges each is based upon a mistaken interpretation of Section 149A of the Mississippi Constitution. This section is in the following language:
"The Supreme Court shall have power, under such rules and regulations as it may adopt, to sit in two divisions of three judges each, any two of whom when convened shall form a quorum; each division shall have full power to hear and adjudge all cases that may be assigned to it by the court. In event the judges composing any division shall differ as to the judgment to be rendered in any cause, or in event any judge of either division, within a time and in a manner to be fixed by the rules to be adopted by the court, shall certify that in his opinion any decision of any division of the court is in conflict with any prior decision of the court or of any division *428 thereof, the cause shall then be considered and adjudged by the full court or a quorum thereof." (Emphasis added).
This section was promulgated by a concurrent resolution of the Legislature. [Appendix I].
The concurrent resolution for the proposed amendment to the Constitution was based upon the proposition that the Court would be increased to six judges, not nine. The proposed amendment was predicated upon the following language:

"Whereas, At its session held A.D. 1914, the legislature of the state of Mississippi, in the manner prescribed by section 273 of the constitution of the state of Mississippi, passed an amendment to said constitution adding a new section thereto, providing that the supreme court may sit for the trial of causes in two divisions, the resolution embodying said amendment, as appears from chapter 519 of the laws of 1914, being as follows:
* * * * * *
`In event there shall be adopted at this election an amendment to the constitution increasing the number of judges of the supreme court, the constitution shall then be further amended by adding thereto a new section, which shall read as follows:'"
Ch. 152 [1916] Miss.Gen.Laws 208-09.
The Court was then given power to sit in two divisions of three judges each by the amendment.
Section 149A was adopted  in my judgment, beyond any question  only to apply to a six-judge court. Moreover, it is unreasonable to suppose that a nine-judge court can sit in two divisions of three judges each as is permitted by Section 149A of the Constitution.
If it is considered that Section 145B (added to the Constitution in 1952) is in conflict with Section 149A of the Constitution (which was ratified in 1916), Section 145B must prevail because it is the last expression of the will of the people.
The last paragraph of 16 Am.Jur.2d Constitutional Law § 69, at 247 (1964), is in the following language:
"If there is a real inconsistency between a constitutional amendment and an antecedent provision, the amendment must prevail because it is the latest expression of the will of the people. In such a case there is no room for the application of the rule as to harmonizing inconsistent provisions. If it covers the same subject as was covered by a previously existing constitutional provision, thereby indicating an intent to substitute it in lieu of the original, the doctrine of implied repeal, though not favored, will be applied and the original provision deemed superseded."
See also 11 Am.Jur. Constitutional Law § 54, at 664 (1937).
It is said in 16 C.J.S. Constitutional Law § 42, at 132 (1956):
"Even though an amendment does not in terms expressly repeal a constitutional provision, yet, if it covers the same subject provided for in such provision, the amendment will be regarded as a substitute for, and as superseding, it."
In a well-reasoned opinion in Chesshir v. Copeland, 182 Ark. 425, 428, 32 S.W.2d 301, 302 (1930), the Supreme Court of Arkansas said:
"The general rule is that constitutional provisions and amendments thereto must be harmonized where practical. If there is to some extent an inconsistency or repugnancy between a provision of the Constitution and an amendment thereto so that one or the other must yield, the amendment, being the last expression of the sovereign will of the people, will prevail as an implied repeal to the extent of the conflict. The same rule of construction would apply in the construction *429 of amendments. The latter amendment would govern to the extent that it was repugnant to, or in conflict with, the provisions of the former one. [Citing cases]. The principle of constitutional construction above laid down has been uniformly adhered to and applied according to the varying facts of the different cases."
In the case of Summers v. State, 244 Ala. 672, 15 So.2d 502 (1943), where the issue before the court was whether or not a constitutional amendment pertaining to pardons and paroles was intended to be a substitute for a previous constitutional provision, the Supreme Court of Alabama stated:
"The insistence seems to be that Amendment XXXVIII of the Constitution, as found preceding Title 1, page 332, Code of 1940, did not authorize the Legislature to create a board of pardons and paroles different from that already provided for in Section 124 of the Constitution of 1901, and that the only authority for the granting of pardons and paroles is that found in this latter section. True, Amendment XXXVIII does not state in so many words that it constitutes a substitute for Section 124 of the Constitution, but we think when the original act submitting the proposed constitutional amendment is considered in connection with the act of the Legislature passed in pursuance thereof five months thereafter, that it clearly appears said amendment was intended as a substitute for said section." 244 Ala. at 672-73, 15 So.2d at 503.
In Sylvester v. Tindall, 154 Fla. 663, 18 So.2d 892 (1944), the Florida Supreme Court had an opportunity to also point out that where a constitutional amendment conflicts with a preexisting provision of the constitution, the amendment must prevail since it is the latest expression of the people's will.
In Townsend v. McDonald, 184 Ark. 273, 275, 42 S.W.2d 410, 412 (1931), the Supreme Court of Arkansas said:
"The general rule of construction applicable to constitutional amendments is that the later amendment governs to the extent that it is repugnant to, or in conflict with the provisions of the former one. [Citing Chesshir v. Copeland, 182 Ark. 425, 32 S.W.2d 301 (1930)]."
In Dawson v. Tobin, 74 N.D. 713, 24 N.W.2d 737 (1946), the court pointed out that new amendments supersede the old amendments when they are in conflict. This rule seems to be universal. See Fairbank v. United States, 181 U.S. 283, 311, 21 S.Ct. 648, 659, 45 L.Ed. 862, 874 (1901); Badger v. Hoidale, 88 F.2d 208, 109 A.L.R. 798 (8th Cir.1937); Pressley v. Industrial Comm'n., 73 Ariz. 22, 30, 236 P.2d 1011, 1017 (1951); Williams v. Magma Copper Co., 5 Ariz. App. 236, 238, 425 P.2d 138, 140 (1967); People v. Adamson, 27 Cal.2d 478, 165 P.2d 3 (1946) (opinion by Justice Traynor); Wilson v. Crews, 160 Fla. 169, 34 So.2d 114 (1948); State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949); Smith v. State, 210 La. 582, 27 So.2d 359 (1946); State ex rel. University of Minn. v. Chase, 175 Minn. 259, 272, 220 N.W. 951, 956 (1928); State ex rel. Chase v. Babcock, 175 Minn. 103, 107, 220 N.W. 408, 410 (1928).
It is, therefore, abundantly clear that Section 145B must take precedence over the formerly adopted Section 149A, Mississippi Constitution, since they cover the same subject matter.

IV.

FORMER CONFLICT IN AMENDMENTS HARMONIZED.
Where conflicts in constitutional provisions may be harmonized, the Court will so interpret the conflicting provisions [State ex rel. Collins v. Jackson, 119 Miss. 727, 81 So. 1 (1919)], but where they cannot be harmonized, the former must give way to the latter in time. The last must be deemed to have superseded the former. Wilson v. Crews, 160 Fla. 169, 34 So.2d *430 114 (1948); State ex rel. Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958).
In Johnston v. Hicks, 225 Ga. 576, 170 S.E.2d 410 (1969), the Georgia Supreme Court held that where an amendment to the constitution was in irreconcilable conflict with an existing provision of the constitution, the amendment being the last expression of the people must prevail. See also 16 Am.Jur.2d Constitutional Law § 68, at 246-47 (1964).
It is apparent to a casual reader that two former sections of the Constitution  Section 145A [Appendix II] and Section 149A [Appendix III]  were in conflict at the time of their adoption as to the number of judges required to constitute a quorum. Section 145A [Appendix II] provided that in a six-judge court "any four of whom when convened shall form a quorum." (Emphasis added). On the other hand, Section 149A provided that the Supreme Court may "sit in two divisions of three judges each, two of whom when convened shall form a quorum." (Emphasis added).
This conflict of quorum definitions obviously grew out of the fact that several resolutions for constitutional amendments were passed at the same time by the legislature with reference to the Supreme Court. On the same dates [March 7 and March 21 of 1914] the legislature resolved to submit to the people, in addition to Sections 145A and 149A, an amendment making the offices of supreme court judges elective by the people. [Appendix IV].
At the same time, the legislature offered a resolution to amend Section 165 which had previously contained the sentence: "Where either party shall desire, the supreme court, for the trial of any cause, shall be composed of three judges." [Appendix V]. The new resolution deleted the last three lines of this section, leaving out the right of the parties to agree to a three-judge court. [Appendix VI]. The legislature also submitted to the people by joint resolution an amendment providing that in the event the people voted to increase the supreme court to six judges, the judges would be elected two each from the three supreme court districts. [Appendix VII].
The various amendments were submitted to the electors of the state who voted for the amendments, some of which were based upon the proposition that the court would be increased to six judges.
The lawyers soon found the conflict between Section 145A and Section 149A. This issue was raised in Dean v. State, 173 Miss. 309, 162 So. 155, overruling suggestion of error in 173 Miss. 254, 160 So. 584 (1935), and in that case the Court said: "When this court is sitting in banc, there must be at least four of its judges present; and no action can be taken by it unless a majority of the judges present concur therein." 173 Miss. at 309, 162 So. at 157. The Court went on to say that when there is an equally divided court, the case must be affirmed.
Later in the case of Slush v. Patterson, 201 Miss. 131, 29 So.2d 311, overruling suggestion of error in 201 Miss. 113, 28 So.2d 738 (1947), the conflict between these constitutional amendments was again presented to this Court, and we said:
"It is too late now to consider that all those cases were decided without constitutional authority, because reversed by the vote of three instead of four Judges, and we hereby expressly bring forward and affirm what was said on the subject by Smith, C.J., in response to the suggestion of error in Dean v. State, 173 Miss. 254, at pages 309 and 310, 160 So. 584, 162 So. 155." 201 Miss. at 132, 29 So.2d at 312.
It is obvious that the Court harmonized these two sections so that four judges were required to participate en banc, but that three judges constituted a quorum to reverse a case where at least four participated.
*431 However, this decision is based upon the proposition that the constitution had been interpreted so as to permit a reversal by three judges "for more than a quarter of a century." 201 Miss. at 132, 29 So.2d at 312.
There was nothing unusual about the decision of the Court to harmonize two conflicting constitutional sections, where such sections can be harmonized. In State ex rel. Collins v. Jackson, 119 Miss. 727, 81 So. 1 (1919), this Court said:
"In construing this amendment (section 33 of our Constitution), it is our duty to consider also section 75 of the Constitution, and, if possible, to harmonize and give effect to both sections. If this cannot be done, and it is clear that the amendment repeals section 75 by implication, then it is our duty to so hold." 119 Miss. at 739, 81 So. at 5.
I submit that it is impossible for a nine-judge court to sit in two divisions of three judges each. Moreover, we have not been sitting in a three-judge panel "for a quarter of a century" since the people amended the Constitution so as to require us to have a quorum of five judges in order to transact business.
In the case of Hays Finance Co. v. Bailey, 56 So.2d 806, overruling motion for hearing en banc, 56 So.2d 76 (Miss. 1952), overruling suggestion of error in 54 So.2d 727 (Miss. 1951), a motion was made in this Court requesting a hearing en banc. This Court stated:
"At the time this cause was decided and judgment entered, and at the time judgment was entered overruling the Suggestion of Error therein, this Court was composed of six Judges, who, under Section 149A of the Constitution of 1890, implemented by Rule 34 of this Court, sat in two divisions of three Judges each. This cause was decided finally by Division B without dissent.
* * * * * *
It is immaterial that, since the decision of this case, the Legislature has ratified an amendment to our Constitution increasing the number of Judges to nine. All judgments entered herein antedated the adoption of such amendment.
* * * * * *
We hold, therefore, that the decision and judgment herein is, insofar as this Court is concerned, a final judgment rendered `by the highest court of a State, in which a decision could be had.' However, this motion has been considered by the Court in banc since separate hearings by divisions have now been discontinued." 56 So.2d at 807. (Emphasis added).
It is apparent from the foregoing authorities that this Court has heretofore interpreted the Constitution to require five judges to constitute a quorum.

V.
The majority opinion cites the following cases as authority for holding that we can sit in panels of three: Ryan Supply Co. v. Brett, 222 Miss. 36, 75 So.2d 721, overruling motion for hearing en banc, 222 Miss. 30, 75 So.2d 75 (1954); Hudson v. Gulf Refining Co., 202 Miss. 351, 30 So.2d 421, overruling motion for hearing en banc, 202 Miss. 331, 30 So.2d 66, cert. denied, 332 U.S. 775, 68 S.Ct. 84, 92 L.Ed. 359 (1947); Slush v. Patterson, 201 Miss. 131, 29 So.2d 311, overruling suggestion of error in 201 Miss. 113, 28 So.2d 738 (1947); Jefferson Standard Life Insurance Co. v. Ham, 178 Miss. 838, 173 So. 672 (1937).
In the outset, it will be observed that all of these cases [except Ryan Supply Co.] were decided before the amendment to the Constitution was added by Ch. 468, [1952] Miss.Gen.Laws 754-55, to require a quorum of five judges, and could not apply to a later amendment requiring a quorum of five judges.
In the next place, since Section 145B became a part of the Constitution, this Court *432 has expressly pointed out that the practice of hearing cases by three judges under the authority of Section 149A of the Constitution has "been discontinued." Hays Finance Co. v. Bailey, supra.
The case of Ryan Supply Co. v. Brett, 222 Miss. 36, 75 So.2d 721, overruling motion for hearing en banc, 222 Miss. 30, 75 So.2d 75 (1954), cited as authority for permitting this Court to divide into three divisions of three judges each, does not in fact so hold. This was a workmen's compensation case. This Court on appeal reversed the judgment of the circuit court and entered judgment here for the appellant. The appellee filed a motion requesting this Court to hear the case en banc (before nine judges). We held that this was not necessary when five judges agreed, and said:
"In increasing the personnel of the Court from six to nine members by a constitutional amendment, for the purpose of enabling the Court to keep the docket reasonably current in the disposition of the cases, it was provided that five members of the Court should constitute a quorum for the hearing and disposition of a case. Under our procedure of working in two groups it follows that one of the Judges sitting on a particular day must sit with the other four on the next sitting thereafter. It is deemed expedient that in response to the above styled motion we should emphasize the fact that neither an appellant nor appellee can either win or lose a case before a five-judge group except by unanimous consent of the judges who compose the same. If it should be found upon the consideration of the suggestion of error filed herein that either of the five Judges who participated in the former decision should be of the opinion that it should be sustained, the result will be that the sugestion of error will then automatically be referred to all nine of the Judges for decision." 222 Miss. at 36-37, 75 So.2d at 721.

VI.
In my humble judgment, our Constitution plainly requires a quorum of five judges, and my experience has taught me that five judges are more likely to reach a proper judgment than are three judges. There are many reasons for this conclusion. Judges come to this Court from various environments. Some judges are trained in the general practice of law; others are trained in specific subjects: corporate law, equity law, criminal law, administrative law, banking, and other subjects. One who is trained in a specific subject is more likely to reach a proper conclusion than others who are being introduced to that subject and who may be handicapped by their own former training in another legal subject. It is, therefore, much better to have a case decided by five judges than by three judges who are not trained in the subject before the Court.
If it had been the intention and will of the people that they desire this Court to continue to operate as a three-judge court, they could have very easily said so, but that is not what they said. I am constrained to say that a three-judge court is not in fact authorized to act.
If it is said that this Court has inherent power to divide itself into three divisions, I must point out that we are bound by Section 149B of the Mississippi Constitution.
If it is to be considered that the mere reading of the written opinion rendered by the Supreme Court judges is sufficient to establish a five-judge quorum, when finally read by the other members of the Court, I suggest that Section 145B of the Constitution requires the presence of five judges before the Court can be "convened."
I also point out that there are many cases affirmed by the three-judge panel in which no opinion is written. In that event, where is the five-judge quorum required by the Constitution?
In Dean v. State, 173 Miss. 309, 315, 162 So. 155, 159, overruling suggestion of error *433 in 173 Miss. 254, 160 So. 584 (1935), it is said:
"A judge when deciding a judicial question must do three things: (a) Find the facts; (b) find the governing law; and (c) apply that law to the facts. When the court is composed of more than one judge, each of them must do these three things, and then vote for such judgment as his legal and judicial conscience approves, in the words of his oath of office, `according to the best of my (his) ability and understanding.' If after full and free consultation with his associates, a judge is unable to agree with them, he should adhere to his views. For him to do otherwise would `turn judgment to wormwood and leave off righteousness.'"

APPENDIX I

Chapter 519.

Senate Concurrent Resolution No. 32
A Concurrent Resolution proposing an amendment to the constitution providing that the supreme court may sit for the trial of causes in two divisions.
Supreme court to sit in two divisions; constitutional amendment.
Resolved by the Legislature of the State of Mississippi, two-thirds of each House agreeing thereto, that the following amendment to the state constitution be submitted to the qualified electors of the state for ratification or rejection at an election to be held on the first Tuesday after the first Monday in November, 1914, viz:
In event there shall be adopted at this election an amendment to the constitution increasing the number of judges of the supreme court, the constitution shall then be further amended by adding thereto a new section which shall read as follows:
"The supreme court shall have power, under such rules and regulations as it may adopt, to sit in two divisions of three judges each, any two of whom when convened shall form a quorum; each division shall have full power to hear and adjudge all causes that may be assigned to it by the court. In event the judges composing any division shall differ as to the judgment to be rendered in any cause, or in event any judge of either division, within a time and in a manner to be fixed by the rules to be adopted by the court, shall certify that in his opinion any decision of any division of the court is in conflict with any prior decision of the court or of any division thereof, the cause shall then be considered and adjudged by the full court or a quorum thereof."
Adopted by the Senate March 7, 1914.
Adopted by the House of Representatives March 21, 1914.
Source: Ch. 519, [1914] Miss.Gen.Laws 526.

APPENDIX II
"The Supreme Court shall consist of six judges, that is to say, of three judges in addition to the three provided for by section 145 of this Constitution, any four of whom when convened shall form a quorum. The additional judges herein provided for shall be selected one for and from each of the Supreme Court districts in the manner provided by section 145 of this Constitution, or any amendments thereto. Their terms of office shall be as provided by section 149 of this Constitution, or any amendment thereto."
Source: Miss.Const. Section 145A.

APPENDIX III
"The Supreme Court shall have power, under such rules and regulations as it may adopt, to sit in two divisions of three judges each, any two of whom when convened shall form a quorum; each division shall have full power to hear and adjudge all cases that may be assigned to it by the court. In event the judges composing any *434 division shall differ as to the judgment to be rendered in any cause, or in event any judge of either division, within a time and in a manner to be fixed by the rules to be adopted by the court, shall certify that in his opinion any decision of any division of the court is in conflict with any prior decision of the court or of any division thereof, the cause shall then be considered and adjudged by the full court or a quorum thereof."
Source: Miss.Const. Section 149A.

APPENDIX IV

Chapter 516.

Senate Concurrent Resolution No. 30.
A Concurrent Resolution proposing an amendment to the constitution by eliminating therefrom section 151.
To eliminate section 151 constitution.
Resolved by the Legislature of the State of Mississippi, two-thirds of each House agreeing thereto, that the following amendment to the state constitution be submitted to the qualified electors of the state for ratification or rejection at an election to be held on the first Tuesday after the first Monday in November, 1914, viz:
In the event there shall be submitted and adopted at this election an amendment to the constitution requiring that judges of the supreme court shall be elected by the people, section 151 of the constitution shall be and is hereby annulled and eliminated therefrom.
Adopted by the Senate March 7, 1914.
Adopted by the House of Representatives March 21, 1914.
Source: Ch. 516, [1914] Miss.Gen.Laws 524.

APPENDIX V
No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties. Whenever any judge of the Supreme Court or the judge or chancellor of any district in this state, shall, for any reason, be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the governor may commission another, or others, of law knowledge, to preside at such term or during such disability or disqualification in the place of the judge or judges so disqualified. Where either party shall desire, the supreme court, for the trial of any cause, shall be composed of three judges. No judgment or decree shall be affirmed by disagreement of two judges constituting a quorum.
Source: Miss.Const. Section 165.

APPENDIX VI

Chapter 517.

Senate Concurrent Resolution No. 33.
A Concurrent Resolution proposing an amendment to the constitution, eliminating therefrom the provision that "Where either party shall desire, the supreme court, for the trial of any cause, shall be composed of three judges. No judgment or decree shall be affirmed by disagreement of two judges constituting a quorum."
To eliminate part of section 165 constitution.
Resolved by the Legislature of the State of Mississippi, two-thirds of each House agreeing thereto, that the following amendment to the state constitution be submitted to the qualified electors of the state for ratification or rejection at an election to be held on the first Tuesday after the first Monday in November, 1914, viz:
In event there shall be submitted and adopted at this election an amendment to *435 the constitution increasing the number of the judges of the supreme court, section 165 of the constitution shall then be amended so as to strike therefrom the three (3) and a fraction lines thereof which read as follows: "When either party shall desire, the supreme court, for the trial of any cause, shall be composed of three judges. No judgment or decree shall be affirmed by disagreement of two judges constituting a quorum."
Adopted by the Senate March 7, 1914.
Adopted by the House of Representatives March 21, 1914.
Source: Ch. 517, [1914] Miss.Gen.Laws 524-25.

APPENDIX VII

Chapter 518.

Senate Concurrent Resolution No. 28.
A Concurrent Resolution proposing an amendment to the constitution increasing the number of supreme court judges to six.
To provide for six supreme judges; constitutional amendment.
Resolved by the Legislature of the State of Mississippi, two-thirds of each House agreeing thereto, that the following amendment to the state constitution be submitted to the qualified electors of the state for ratification or rejection at an election to be held on the first Tuesday after the first Monday in November, 1914, viz:
Amend the constitution by adding an additional section thereto which shall read as follows:
The supreme court shall consist of six judges, that is to say, of three judges in addition to the three provided for by section 145 of this constitution, any four of whom when convened shall form a quorum. The additional judges herein provided for shall be selected one for and from each of the supreme court districts in the manner provided by section 145 of this constitution, or any amendment thereto. Their terms of office shall be as provided by section 149 of this constitution or any amendment thereto.
Adopted by the Senate March 7, 1914.
Adopted by the House of Representatives March 21, 1914.
Source: Ch. 518, [1914] Miss.Gen.Laws 525.
NOTES
[1] The order also provides that in the event the judges composing any division shall differ as to the judgment to be rendered in any cause, or in the event any judge of any division, within a time and in a manner to be fixed by the rules to be adopted by the Court, shall certify that in his opinion any decision of any division of the Court is in conflict with any prior decision of the Court, or of any division thereof, or that the cause is of such importance that it should be considered by the full Court, the cause shall then be considered and adjudged by the full Court or a quorum thereof. See also Rule 35, Rules of the Supreme Court as amended.